**HOGAN LOVELLS US LLP**
Vassi Iliadis (SBN 296382)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com

David J. Marmins (*pro hac vice application forthcoming*)
Jordyn L. Simon (*pro hac vice application forthcoming*)
Arnall Golden Gregory LLP
171 17th Street NW
Atlanta, GA 30363
Telephone:  (404) 873-8500
david.marmins@agg.com
jordyn.simon@agg.com

*Attorneys for Defendant*
*Alamo Intermediate II Holdings, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAISY GARZA, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALAMO INTERMEDIATE II HOLDINGS, LLC,<br><br>Defendant. | Case No.  4:23-cv-05849-VC<br><br>The Honorable Vince Chabria<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; PROPOSED ORDER**<br><br>Date: February 22, 2024<br>Time: 10:00 a.m.<br>Courtroom 4 |

# NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 7, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, defendant Alamo Intermediate II Holdings, LLC ("Alamo" or "Defendant") will, and hereby does, move the Court for an order dismissing the claims of Plaintiffs Daisy Garza ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the Complaint should be dismissed because Plaintiff fails to state valid claims for relief.

This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities in support thereof; all documents in the Court's file; and on such other arguments as may be presented to the Court.

Dated: January 15, 2024

**HOGAN LOVELLS US LLP**

By: /s/ *Vassi Iliadis*

Vassi Iliadis (SBN 296382)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com

David J. Marmins (*pro hac vice application forthcoming*)
Jordyn L. Simon (*pro hac vice application forthcoming*)
Arnall Golden Gregory LLP
171 17th Street NW
Atlanta, GA 30363
Telephone: (404) 873-8500
david.marmins@agg.com
jordyn.simon@agg.com

*Attorneys for Defendant*
*Alamo Intermediate II Holdings, LLC*

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ................................................................................ vi

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 3

LEGAL STANDARD ..................................................................................................................... 4

ARGUMENT ................................................................................................................................... 5

I.    **Plaintiff Fails to State a Claim Under The VPPA** ........................................................ 5

    A.    Plaintiff is Not a "Consumer" Within the Meaning of the VPPA ............................... 6

    B.    A Movie Ticket Is Not a Prerecorded Video Cassette Tape or Similar Audio Visual Material Within the Meaning of The VPPA. ........................................................ 8

    C.    The VPPA Does not Apply to Movies Viewed in a Public Location. ........................ 10

II.    **Plaintiff Fails to State a Claim Under California Civil Code § 1799.3** ...................... 11

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................................ 4

*Cantu v. Tapestry, Inc.*, No. 22-CV-1974-BAS-DDL, 2023 WL 6451109 (S.D. Cal. Oct. 3, 2023) ........................................................................................................................................ 11

*Carter v. Scripps Networks, LLC*, No. 22-CV-2031 (PKC), 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023) ................................................................................................................................. 6

*Ghanaat v. Numerade Labs, Inc.*, No. 23-CV-00833, 2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) ............................................................................................................................... 9, 10

*In re Nickelodeon, Consumer Priv. Litig.*, 827 F.3d 262 (3rd Cir. 2016) ...................................... 5

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................... 6

*Kuzenski v. Uproxx LLC*, No. 223CV00945WLHAGR, 2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ................................................................................................................................. 5, 6

*Louth v. NFL Enterprises LLC*, No. 121CV00405MSMPAS, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) ....................................................................................................................................... 9

*Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ................................................................................................................................ 5, 8

*Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841 (N.D. Cal. 2022) ...................................................... 9

**Statutes**

18 U.S.C. § 2710(a)(1) .................................................................................................................. 6

18 U.S.C. § 2710(a)(4) .................................................................................................................. 8

18 U.S.C. § 2710(b)(1) .................................................................................................................. 5

Cal. Civ. Code § 1799.3(a) .......................................................................................................... 12

Cal. Civ. Code §1799.3(c) ……………………………………………………………………... 12

**Other Authorities**

158 Cong. Rec. H6849-01 ........................................................................................................... 11

BUSINESS RECORDS—PRIVACY—CASSETTE SALES OR RENTAL SERVICES, 1988 Cal. Legis. Serv. 1050 .................................................................................................. 12

California Bill Analysis, A.B. 176 Assem., 3/17/2009 ................................................... 12

California Bill Analysis, A.B. 176 Assem., 6/9/2009 ..................................................... 12

Google English Dictionary Provided by Oxford Languages
*https://www.google.com/search?q=streaming+meaning&rlz=1C1GCEA_enUS1075US1075&oq=strea&gs_lcrp=EgZjaHJvbWUqDggAEEUYJxg7GIAEGIoFMg4IABBFGCcYOxiABBiKBTIGCAEQRRg5Mg0IAhAAGIMBGLEDGIAEMg0IAxAAGIMBGLEDGIAEMhMIBBAuGIMBGMcBGLEDGNEDGIAEMgYIBRBFGDwyBggGEEUYPDIGCAcQRRg80gEIMzg1NmoxajeoAgCwAgA&sourceid=chrome&ie=UTF-8* (visited on January 8, 2024) ......................................... 7

Oxford Learns Dictionary (January 8, 2024)
https://www.oxfordlearnersdictionaries.com/us/definition/english/streaming?q=streaming ...... 7

Purchaser, *Black's Law Dictionary* (11th ed. 2019) ......................................................... 6

S. REP. NO. 100-599 (1988) ............................................................................. 5, 8, 10, 11

Ticket, *Black's Law Dictionary* (11th ed. 2019) ............................................................. 7

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to Local Rule 7-4(a)(3), this Motion raises the following issues:

(1) Whether Plaintiff's Video Protection Privacy Act ("VPPA") § 2710 claim fails because Plaintiff fails to allege facts sufficient to show that she is a "consumer" within the meaning of the VPPA.

(2) Whether Plaintiff's VPPA claim further fails because a movie ticket is not a "prerecorded cassette tape or similar audio visual material" as required by the VPPA.

(3) Whether Plaintiff's VPPA claim fails for the additional reason that the VPPA does not apply to movies viewed in public movie theaters.

(4) Whether Plaintiff's California Civil Code § 1799.3 ("Section 1799.3") claim fails because a movie ticket is not a "video recording sale[] or rental service[]" as required by § 1799.3.

(5) Whether Plaintiff's Section 1799.3 claim fails because Section 1799.3 does not apply to movie tickets.

# MEMORANDUM OF POINTS AND AUTHORITIES
# INTRODUCTION

Plaintiff's case is one of hundreds of largely cookie-cutter class action suits which attempt to shoehorn allegations related to the use of ubiquitous web technologies into claims for purported violations of statutes that do not apply to cases like this.  In particular, there has been a flurry of attempts to expand the Video Privacy Protection Act ("VPPA"), and similarly California Civil Code § 1799.3 ("Section 1799.3"), the State law corollary to the VPPA, to obtain a statutory damages payday.  Overreaching plaintiffs have commenced actions across the country claiming that a wide array of businesses—news providers, food manufacturers, digital media companies, professional sports leagues—violate the VPPA by disclosing their website visitors' internet browsing activities through the use of web tracking technologies. The majority of complaints follow a standard scheme to redefine the meaning of "renter," "purchaser," and/or "subscriber" to qualify as a consumer – the sole protected class under the VPPA.  The Complaint in this case follows the same approach.

Plaintiff Daisy Garza ("Plaintiff") contends that Defendant Alamo Intermediate II Holdings LLC ("Alamo") has violated the VPPA and Section 1799.3 by purportedly using web tracking technologies www.drafthouse.com ("Alamo's Website" or the "Website")  to collect the titles of movies consumers purchased tickets online to see, along with the movie theater locations where those movies aired.   *See* Complaint ("Compl.") ¶¶ 2,6.  Plaintiff claims by selling tickets to view movies at Alamo's physical theater locations, Alamo is "'***renting***' consumers access to view 'prerecorded. . . . audio visual materials' on its physical premises and is '***delivering***' consumers those same prerecorded audio visual materials on its premises by playing them on a cinema screen." *Id*. 70, 81 (emphasis added).  But Plaintiff's overly broad interpretation of the VPPA and Section 1799.3 should be rejected for the following reasons:

*First*, Plaintiff is not a "consumer" within the meaning of the VPPA.  The VPPA narrowly defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1). Plaintiff does not allege that she is a subscriber; rather, she seeks to classify herself as a "renter" or "purchaser" of audio visual material on the ground that she purchased a movie ticket on Defendant's website.

*Second*, a movie ticket is not a "prerecorded cassette tape or similar audio visual material" under the VPPA.  Rather, a movie ticket serves as a license to access a theater that is open to the public on a future date, at a future time, to view a movie controlled by someone or something else. When enacting the VPPA, Congress clarified that "similar audio visual material" refers to technological mediums such as open reels and DVDs.  It is not a catchall for every time people look at a screen.   Indeed, when consumers purchase or rent prerecorded audio visual material as contemplated by the VPPA, they obtain immediate control over the video content.  The consumer can fast forward, pause, rewind, turn on subtitles, etc. within the comfort of their own home or on their personal device. The ability to view and do what one pleases with prerecorded audio visual material in the privacy of one's own home is the essence of what the VPPA and § 1799.3 seek to protect.

*Third*, Section 1799.3 is the State corollary to the VPPA. It was enacted to prohibit people providing "video recording sales or rental services" from disclosing consumer's, *inter alia*, "sales or rental information." As set forth above (and in more detail below) purchasing a movie ticket is not a video recording sale or rental service.

Enabling Plaintiff to expand the scope of the VPPA and, relatedly, Section 1799.3, will upend the very pointed purpose of the laws.  Plaintiff has not—and cannot—state a claim for relief against Alamo.   The Complaint should be dismissed.

For these reasons, which are set forth below with particularity, the Complaint must be dismissed for failure to state a claim.

## BACKGROUND

Defendant operates movie theaters known as Alamo Drafthouse Cinemas ("Alamo") across the United States offering "good food, good beer, and good film – all at the same place." *See* https://drafthouse.com/about (last accessed on Jan. 15, 2024). It is a comfortable atmosphere but certainly not a private one. Prior to arriving at an Alamo theater location, patrons can opt to pre-purchase movie tickets online at www.drafthouse.com (hereinafter, "Alamo's Website" or "Website") in lieu of at the box office.

According to the Complaint, Alamo's Website purportedly contains web tracking technologies—the Meta Tracking Pixel, TikTok Tracking Pixel, TradeDesk Tracking Pixel, AdRoll Tracking Pixel, and Google Ad Services and Analytics—used to track visitor activity. Compl. ¶¶ 26, 43. Much of the Complaint contains generalized and conclusory allegations about these technologies and Alamo's use of such technologies on the Website. *See, e.g.,* Compl. ¶¶ 13-55. The Complaint alleges that once a user selects a movie (s)he would like to purchase tickets for on the Website, certain "events" are captured by these technologies and transmitted to third parties (*id*. ¶¶ 27-30, 44-50), as well as an "identifying 'computer cookie'" called 'c_user' that "contains visitor's encrypted Facebook ID" (*id*. ¶ 30), and a "fr cookie" that "contains, at least, an encrypted Facebook ID and browser identifier." *Id.* ¶ 33. The Complaint avers that by "compelling a visitor's browser to disclose the c_user and fr cookies alongside event data," [Alamo] knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's movie viewing behavior." *Id.* ¶ 41.

The Complaint alleges that Plaintiff purchased tickets on the Website in or about September 2022 to watch a movie at one of Defendant's movie theater locations. Compl. ¶ 56. She contends that through this transaction, Alamo "disclosed her event data," which included the title of the movie, the Alamo theater location that she purchased tickets for, the price she paid, and the number

of tickets she purchased, along with her "c_user" and "fr cookies," to Meta, TikTok, TradeDesk, AdRoll, and Google. *Id.* ¶ 57. Plaintiff allegedly became aware of the purported disclosure in or about October 2023. *Id.* ¶ 59. She does not allege that she ever watched audio visual material on Alamo's Website or at its physical theater location. *See generally* Compl. Plaintiff's claims rise and fall with her online ticket purchase.

Plaintiff alleges Alamo's disclosures violate the VPPA and Section 1799.3. She purports to represent a nationwide class of "[a]ll persons in the United States who have Facebook accounts and purchased movie tickets on drafthouse.com," Compl. ¶ 60, and a California class of "[a]ll Class members in the State of California who purchased tickets on drafthouse.com." *Id.* ¶ 61. The proposed California class "includes individuals who do not have Facebook accounts [ ] and thus would not be included in the United States Class . . . ." *Id.*

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Rather, the complaint must allege a factual basis for each element of each cause of action. *See Iqbal*, 556 U.S. at 678-79, 687 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

# ARGUMENT

## I. Plaintiff Fails to State a Claim Under The VPPA

During the contentious hearings that followed President Ronald Regan's nomination of Judge Robert Bork to the Supreme Court, a Washington newspaper obtained information about Judge Bork's videotape rental history. Without the knowledge or consent of Judge Bork, the newspaper published a profile based on the 146 videotapes his family had rented. *See* S. REP. NO. 100-599, at 5 (1988). *In re Nickelodeon*, *Consumer Priv. Litig.*, 827 F.3d 262, 278 (3rd Cir. 2016). Congress responded by enacting the VPPA in 1988. Congress passed the statute "'[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials.'" *Id.*, citing S. Rep. No. 100-599, at 1 (1988).

The VPPA provides that, with certain exceptions not relevant to this case, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). "[T]o plead a plausible claim under section 2710(b)(1) [of the VPPA], a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any [consumer]' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *2 (E.D.N.Y. Sept. 30, 2023) (quoting *Walker v. Meta Platforms, Inc.*, No. 22-CV-02442, 2023 WL 3607282, at *4 (N.D. Cal. Mar. 3, 2023)); *see also* 18 U.S.C. § 2710(b)(1). "Notably, the VPPA only applies to 'consumers' as it is defined within the VPPA." *See Kuzenski v. Uproxx LLC*, No. 223CV00945WLHAGR, 2023 WL 8251590, at *6 (C.D. Cal. Nov. 27, 2023) (citing 18 U.S.C. § 2710(a)(1)).

Plaintiff's VPPA claim fails as a matter of law.

### A. Plaintiff is Not a "Consumer" Within the Meaning of the VPPA

Plaintiff is not a "consumer" under the statute because she has not alleged facts showing that she is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

"[W]hether Plaintiff is a 'consumer' under the VPPA is a threshold issue, and thus the matter must be dismissed if not adequately alleged." *See Kuzenski*, 2023 WL 8251590, at *6. When interpreting the meaning of "consumer," it is important to look at the statute as a whole. As recently explained in *Carter v. Scripps Networks, LLC*:

> The definitions of "consumer" and "video tape service provider" are paired to some degree: renter with rental, purchaser with sale, and subscriber with delivery, all of which subsection (a)(4) applies to audio visual materials. Thus, the scope of a "consumer," when read with sections 2710(b)(1) and (a)(4), is cabined by the definition of "video tape service provider," with its focus on the rental, sale or delivery of audio visual materials. Section 2710(b)(1) provides for an action by a renter, purchaser of subscriber of audio visual materials, and not a broader category of consumers."

*Carter v. Scripps Networks, LLC*, No. 22-CV-2031 (PKC), 2023 WL 3061858, at *6 (S.D.N.Y. Apr. 24, 2023); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1222 (C.D. Cal. 2017) (The VPPA's "definition of 'consumer' is somewhat narrower than the word's ordinary meaning.").

Since the VPPA does not define "purchaser," "renter," or "subscriber," we must turn to the words' ordinary meanings. Black's Law Dictionary defines a "purchaser" as "[s]omeone who obtains *property* for money or other valuable consideration." Purchaser, *Black's Law Dictionary* (11th ed. 2019) (emphasis added). Similarly, "rent" means "to obtain the possession and use of a place or article in exchange for rent." *See* https://www.merriam-webster.com/dictionary/rent (visited on December 19, 2023). Thus, in the context of the VPPA, a plaintiff must show she purchased or rented a prerecorded cassette tape or similar audio visual materials. Plaintiff has failed

to do so here. Plaintiff alleges only that in or about September 2022 she *purchased* a *ticket* to view a movie at Alamo's physical theater location, Compl. ¶¶ 56, 42, and thus, "*rented*" from Alamo "access to view 'prerecorded . . . audio visual materials' on its physical premises." *Id*. at ¶ 70 (emphasis added). That does not make Plaintiff a "consumer" under the VPPA because she never rented or purchased a movie.

Upon receipt of a movie ticket, a purchaser secures only admission to a public accommodation on specific date at a specific time. *See* Ticket, *Black's Law Dictionary* (11th ed. 2019) (defining "ticket" as "[a] certificate indicating that the person to whom it is issued, or the holder, is entitled to some right or privilege . . . ' A ticket . . . **secures a future right to the bearer; thus differing from a receipt or voucher, which merely proves a right already secured**.'") (emphasis added). The right secured by a movie ticket is entirely distinct from renting or purchasing video content. When people purchase or rent a video cassette tape, DVD, or streamed content[1], they immediately secure the right to privately view prerecorded video content in their home and/or on a personal device. They can pause, rewind, fast forward, put on subtitles, adjust the volume, etc. as they wish because they maintain exclusive control over the prerecorded video content. Plaintiff did not purchase or rent prerecorded video content from Defendant as contemplated by the VPPA.

Plaintiff's distorted application of the VPPA renders the terms "renter" and "purchaser"

---

[1] Google's English dictionary provided by Oxford Languages defines "streaming" as, "a method of transmitting or receiving data (especially video and audio material) over a computer network as a steady, continuous flow, allowing playback to start while the rest of the data is still being received." *See* Google, *https://www.google.com/search?q=streaming+meaning&rlz=1C1GCEA_enUS1075US1075&oq=strea&gs_lcrp=EgZjaHJvbWUqDggAEEUYJxg7GIAEGIoFMg4IABBFGCcYOxiABBiKBTIGCAEQRRg5Mg0IAhAAGIMBGLEDGIAEMg0IAxAAGIMBGLEDGIAEMhMIBBAuGIMBGMcBGLEDGNEDGIAEMgYIBRBFGDwyBggGEEUYPDIGCAcQRRg80gEIMzg1NmoxajeoAgCwAgA&sourceid=chrome&ie=UTF-8* (last accessed on January 15, 2024); *see also* Oxford Learns Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/streaming?q=streaming ("a method of sending or receiving data, especially video, over a computer network") (last accessed on January 15, 2024).

amorphous. Resorting to such linguistic gymnastics shows that Plaintiff does not fall within the definition of a consumer covered by the VPPA.

### B. A Movie Ticket Is Not a Prerecorded Video Cassette Tape or Similar Audio Visual Material Within the Meaning of The VPPA.

Even if Plaintiff were a "consumer" (she is not), the Complaint still fails to state a claim against Alamo because a movie ticket is not prerecorded audio visual material qualifying for protection under the VPPA.

The VPPA defines "video tape service provider" as, in relevant part, "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of ***prerecorded video cassette tapes or similar audio visual materials***." 18 U.S.C. § 2710(a)(4) (emphasis added). However, not everything sold by a video tape service provider qualifies for protection under the VPPA. In fact, the 1988 Senate Report recommending the VPPA (the "Report") provides: that "[t]he definition of personally identifiable information includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products are within the scope of the [VPPA]. For example, a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products." S. Rep. No. 100-599, at 12 (1988), *reprinted in* 1988 U.S.C.C.A.N. 43420.  In other words, "to state a viable VPPA claim, Plaintiff must plausibly allege that she accessed 'prerecorded' video content and that Defendant disclosed identifying information about those prerecorded videos." *Solomon*, 2023 WL 6390055, at 3–4 (E.D.N.Y. Sept. 30, 2023).

In contrast, this case focuses solely on ticket sales. Plaintiff concedes this much in Paragraph 70 of the Complaint which provides that "Defendant is a 'video tape service provider' because it is a cinema chain where **consumers can purchase movie tickets** to view movies at Alamo's theater locations across the country . . . [and] by allowing consumers to **purchase tickets to a movie**

[Defendant] is 'renting' consumers access to view 'prerecorded . . . audio visual materials,' on its physical premises and is 'delivering' consumers those same prerecorded audio visual materials on its premises by playing them on a cinema screen." Comp. ¶ 70 (emphasis added).[2] Plaintiff does not allege that she ever accessed prerecorded video content sold or rented by Alamo

Further, a movie ticket is not "similar audio visual material." The Report "specifically identif[ies] 'laser discs, open-reel movies, and CDI technologies,' as the types of technologies that provide 'similar audio visual materials,' beyond video cassette tapes." *Louth v. NFL Enterprises LLC*, No. 121CV00405MSMPAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) *citing* S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 43420; *see also Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022). Notably absent is any reference to movie theaters or movie tickets. Each item referenced in the Report is similar to a video cassette tape; they are devices that maintain the prerecorded video content and are available for rent or purchase by consumers for viewing in the privacy of their homes or on their personal devices.

In the same vein, courts in this District have reasonably construed "similar audio visual materials" to include streaming services but not more. *Patreon,* 635 F. Supp. 3d at, 851 ( citing *In re Hulu Priv. Litig.,* No. C 11-03764 LB, 2012 WL 3282960, at *5–6 (N.D. Cal. Aug. 10, 2012) ("noting that 'a plain reading of a statute that covers videota[p]es and 'similar audio visual materials' is about the video content, not about how that content was delivered (*e.g.* via the Internet or a bricks-and-mortar store),' and finding that conclusion bolstered by dictionary definitions and the statute's purpose.' ")); *see also Ghanaat v. Numerade Labs, Inc.*, No. 23-CV-00833, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023)(So long as the audio visual material is pre-recorded and available for streaming/viewing on a website that "is 'substantially involved in the conveyance of

---

[2] Any reference to streaming services on ondemand.drafthouse.com is a red herring. Comp. ¶ 71. Plaintiff does not allege that she or any members of the purported class used on-demand streaming services or that Defendant disclosed PII collected in relation to streaming services.

video content to consumers but also significantly tailored to serve that purpose,' " it falls under the VPPA).³ The VPPA is specifically worded to evolve with technological advancements, but it cannot be strained to include movie tickets or movie theaters.

**C. The VPPA Does not Apply to Movies Viewed in a Public Location.**

Plaintiff's VPPA claim fails because the facts here do not further the intent of the statute.

The VPPA is rooted in the First Amendment. As stated by the Supreme Court in *Stanley v. Georgia*, 394 U.S. 557, 565 (1969), "[i]f the First Amendment means anything, it means the State has no business telling a man, ***sitting alone in his house***, what books he may read and what films he may watch." S. Rep. No. 100–599, at 4342-4 (1988) (emphasis added) citing *Stanley v. Georgia*, 394 U.S. 557, 565 (1969). The VPPA is intended to protect individuals' privacy in their homes, not in public forums like movie theaters. S. Rep. No. 100–599, at 4342-6 (1988).

The narrow scope of the VPPA is crystalized in the Report, which unequivocally states "[t]he bill prohibits ***video stores*** from disclosing 'personally identifiable information' – information that links a customer or patron to particular materials or services." S. Rep. No. 100–599, at 4342-7 (emphasis added). Further, the legislative history discusses other mediums by which people view prerecorded audio visual materials. For example, the Cable Communications Policy Act of 1984 ("CCPA") prohibits a cable service provider from disclosing a cable subscriber's viewing habits without consent. S. Rep. No. 100–599, at 4342-2-4. In other words, if a person watches a movie—

---

³ *Ghanaat* does not expand the application of the VPPA. Rather, it narrowly provides that that the length of a streamed video is not determinative of whether it constitutes "similar audio visual materials." If the audio visual material is pre-recorded and available for streaming/viewing on a website that "is 'substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose,'" then it falls under the VPPA. *Ghanaat,* 2023 WL 5738391, at *2 (N.D. Cal. Aug. 28, 2023).

prerecorded audio visual material—on cable television, their cable viewing history is protected by the CCPA, not the VPPA. The VPPA discretely applies to rented or purchased "prerecorded video cassette tapes or similar audio visual material." Had Congress intended to extend the VPPA to movie theaters it would have written the same into the act – or at the very least, mentioned movie theaters in the Report. Congress was silent.

Congress remained silent when it modified the VPPA in 2012 and, in fact, stated "[t]his bill will ensure that a law related to the handling of *videotape rental* information is updated to reflect the realities of the 21st century." 158 Cong. Rec. H6849-01, 158 Cong. Rec. H6849-01, H6850 (emphasis added); *see also Cantu v. Tapestry, Inc.*, No. 22-CV-1974-BAS-DDL, 2023 WL 6451109, at *3 (S.D. Cal. Oct. 3, 2023)("In 2012, Congress revisited the VPPA to update it for modern times and modern audio-visual consumption habits."). The 2012 amendment only modifies the manner by which consumers can consent to disclosure of their PII. *Id*. Nothing more.

Certainly, Congress was under no illusions as to modern technology when it passed the 2012 amendment. Senator Lamar Smith of Texas stated "[t]oday, consumers are just as likely to stream a movie from the Internet as they are to rent a movie from a video store." 158 Cong. Rec. H6849-01, 158 Cong. Rec. H6849-01, H6851. Similarly, people are just as likely to pre-purchase movie tickets on the internet as they are to buy them at the box office. Still, Congress was silent.

Extending the VPPA to include movie theaters as video tape service providers and movie tickets as "similar audio visual material" is contrary to the Act's purpose. Unrestrained application of the VPPA will circumvent Congress' narrow intent and result in vexatious litigation by plaintiffs seeking to recover statutory damages.

II.  **Plaintiff Fails to State a Claim Under California Civil Code § 1799.3**

Also in 1988, the California Legislature stated that "[e]xisting [state] law does not generally restrict the disclosure by persons providing video cassette sales or rental services of records

prepared or maintained by those persons." BUSINESS RECORDS—PRIVACY—CASSETTE SALES OR RENTAL SERVICES, 1988 Cal. Legis. Serv. 1050. In response, § 1799.3 was added to the California Civil Code ("Section 1799.3"). It is the State law corollary to the VPPA.

Section 1799.3 provides:

> [n]o person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual.

Cal. Civ. Code § 1799.3(a). Like the VPPA, Section 1799.3 creates a private cause of action for disclosure of a person's video rental habits and subjects a violator to a civil penalty of not more than $500 for each violation. *Id.*, §1799.3(c).

The Section 1799.3 Legislative Counsel's Digest approved on September 20, 1988 explains that the statute is specifically tailored to prohibit "persons providing video cassette sales or rental services" from disclosing their business records concerning a person's video viewing habits without that person's express consent. *See* BUSINESS RECORDS—PRIVACY—CASSETTE SALES OR RENTAL SERVICES, 1988 Cal. Legis. Serv. 1050. In 2009, Section 17999.3 was amended to keep up with technological advancements; specifically, "[t]he bill revises . . . statutory references to recording technology by using generic language that is not limited to any specific recording medium, thereby including not only existing digital recording media, but also any recording media that may be developed in the future." California Bill Analysis, A.B. 176 Assem., 6/9/2009; *see also* California Bill Analysis, A.B. 176 Assem., 3/17/2009 ("references to the use of 'tape,' 'cassette,' 'audiotape,' or 'videotape' would be revised to instead refer in a generic manner to any recording technology. The revisions would thereby allow for use of existing digital recording technology that does not make use of a tape, as well as other recording technologies that may be developed in the future"). The California Legislature did not reference movie tickets or movie theaters when it

enacted or amended Section 1799.3. Rather, it made clear that Section 1799.3 applies exclusively to video rentals and sales just like the VPPA.

Alamo—a movie theater operator—is not a person providing "video recording sales or rental services." Plaintiff acknowledges this fact by using selective ellipses to describe her claim under Section 1799.3: "Defendant is a 'person providing video recording sales . . . services' because it sells tickets on drafthouse.com for consumers to access its movie screenings, and thereby delivers thousands of videos throughout its theater locations." Compl. ¶ 81. Plaintiff reiterates her claim under the VPPA, alleging that Alamo "is also a 'person providing video recording . . . rental services' because it is 'rent[ing] access to view 'prerecorded . . . audio visual materials' on its physical premises by selling tickets to watch movies in its cinemas." *Id*. As set forth above, purchasing a ticket to view a movie at a public movie theater is distinct from renting or purchasing a movie to watch on one's own terms in the privacy of one's home. As with the VPPA claim, Plaintiff's allegations do not fall within the purview of Section 1799.3 as it does not apply to movie theaters selling movie tickets.

Plaintiff's Section 1799.3 claim therefore fails for the same reasons her VPPA claim fails.

## **CONCLUSION**

For the foregoing reasons, this court should grant Alamo's motion and dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

Dated: January 15, 2024

**HOGAN LOVELLS US LLP**

By: /s/ *Vassi Iliadis*

Vassi Iliadis (SBN 296382)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com

David J. Marmins (*pro hac vice application forth coming*)
Jordyn L. Simon (*pro hac vice application forth coming*)
Arnall Golden Gregory LLP
171 17th Street NW
Atlanta, GA 30363
Telephone: (404) 873-8500
david.marmins@agg.com
jordyn.simon@agg.com

*Attorneys for Defendant*
*Alamo Intermediate II Holdings, LLC*