**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
         sbogdanovich@bursor.com

*Attorneys for Plaintiff Daisy Garza*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAISY GARZA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALAMO INTERMEDIATE II HOLDINGS, LLC<br><br>Defendant. | Case No. 3:23-cv-05849-VC<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: March 7, 2024<br>Time: 10:00 a.m.<br>Courtroom: 4 |

The Court should enter summary judgment finding that Alamo is a video tape service provider. Alamo does not meaningfully dispute that it satisfies the two-part test laid out in *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).[1] Instead, Alamo only argues "there is no need [to] undertake the *Vizio* test," ECF No. 27, at 5, either because Daisy Garza is not a consumer or because *Osheske v. Silver Cinemas Acquisition Co.*, 2023 WL 8188464 (C.D. Cal. Oct. 31, 2023) holds the VPPA does not apply to movie theaters. Neither argument withstands scrutiny.

Alamo notes that "whether Plaintiff is a 'consumer' within the meaning of the VPPA is germane to determining whether Alamo is a 'video tape service provider.'" ECF No. 27, at 4. Plaintiff agrees. She is a consumer because she bought a specific "video <u>service</u>," from a "video tape <u>service</u> provider"—the delivery of open-reel movies on the silver screen. ECF No. 21, at 3-7.[2] *Accord Goldstein v. Fandango Media, LLC*, 2023 WL 3025111, at *4 (S.D. Fla. Mar. 7, 2023) (holding that a movie theater screening purchaser plaintiff both plausibly alleged he was a consumer and that movie ticket selling website was a video tape service provider). The VPPA's language is "medium-neutral; the defendant must be in the business of delivering video content, but that content need not be in a particular format." *Vizio*, 238 F. Supp. 3d at 1221. So it makes no difference that the delivery takes place on a silver screen, through a Smart TV, or on a personal device. A delivery is a delivery all the same. It is no more of a "stretch" to say Alamo delivers movies on a silver screen than it is to say Vizio delivers movies on a Smart TV or that Facebook

---

[1] Alamo says "if the Court were to find that Alamo satisfies the *Vizio* test—it does not— it would not mean that …the VPPA even applies to Alamo." ECF No. 27, at 5. However, Alamo does not elaborate on this point.

[2] Relatedly, Alamo complains that Ms. Garza "does not allege that she ever watched audio visual material on Alamo's Website or at its physical theater location." ECF No. 27 at 2. But as Ms. Garza already noted, ECF No. 21, at 8, the VPPA does not require that a plaintiff "actively elected to view videos." *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023).

delivers video content to users' personal laptops. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019).

Alamo also argues that because "movie tickets," were not listed in the Senate Report's examples of "similar audio visual materials … it is fair to suppose that Congress considered movie theaters … but intentionally excluded movie theaters." ECF No. 27, at 5-6. But we cannot repurpose the *expressio unius* canon of statutory interpretation to interpret legislative history—especially when the Supreme Court warns us *not* to do so. "Legislative silence is a poor beacon to follow in discerning the proper statutory route." *Zuber v. Allen*, 396 U.S. 168, 185 (1969). In enacting the VPPA, "Congress cast … a broadly inclusive net in the brick-and-mortar world," and "'it is unimportant that the particular application may not have been contemplated by the legislators.'" *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 488 (1st Cir. 2016) (citation omitted).

What is more, contrary to Alamo's assertion, it is *fairer* "to suppose that Congress considered movie theaters" to be video tape service providers when it said the VPPA applies to "open-reel movies." *See* MTD at 5 (citing S. Rep. 100-599, at 5). Back in 1988, movie theaters were the primary persons "engaged in the business of the rental, sale, or delivery" of "open-reel movies." No one else even came close. The *Osheske* court "recalls fondly" that "open-reel movies were commonly viewed in the home at the time the VPPA was enacted." 2023 WL 8188464, at *5, n.6. Fair enough. But aunties and uncles were not "engaged in the business" of delivering those open-reel movies. Such activities were the focus of one's leisure, not "the focus of [one's] work." *Vizio*, 238 F.Supp.3d at 1221. And while some folks may have purchased "open-reel movies" from department stores back in the "1970s," *Osheske*, 2023 WL 8188464, at *5, n.6, by 1988, VHS tapes took over as the predominant form of video recording technology. So, if Congress had *any* service provider in mind when it mentioned "open-reel movies," it was probably movie theaters.

Alamo also argues "streaming … contemplates a consumer's possession and control over such material to watch in their home or on a personal device." ECF No. 27, at 6-7. That is untrue. Alamo's now defunct on-demand video streaming service is a prime example of how consumers *lack* possession and control over movies themselves. A consumer that paid $16.99 to "Buy" the movie *Piggy* from Alamo's on-demand video streaming service, *see* ECF No. 18-3, now has no means of watching it. *See* https://drafthouse.com/sf/on-demand-status. Because Alamo chose to end its streaming service, consumers have now been *dis*possessed of *Piggy*.

Alamo also tries to reassure the Court that siding "with *Osheske* would not abrogate any existing case law," because the other cases applying the *Vizio* test involved Smart TVs or streaming services. ECF No. 27, at 7. But applying the *Vizio* test for some businesses, the *Osheske* test for movie theatres—and perhaps a third, fourth, or fifth *ad hoc* test for whenever a judge comes across a VPPA case he or she does not like—amounts to having no test at all. Alamo's approach is especially problematic in a case like this one, where Alamo operates both movie theaters *and*, until recently, streaming services. Businesses are often like octopi; having many distinct arms that are engaged in many ventures. The *Vizio* test analyzes the business as a whole and asks whether it is "substantially involved in the conveyance of video content." 238 F. Supp. 3d at 1221. The *Vizio* test is thus the more principled approach that this Court should *continue* to apply.

Worse yet, applying the *Osheske* test for *only* movie theaters amounts to creating a movie theater exception to the VPPA. This is improper. The VPPA expressly carves out six exceptions for when it does not apply. *See* 18 U.S.C. § 2710(b)(2)(A), (B), (C), (D), (E), and (F); *see also* Cal. Civ. Code § 1799.3 (b)(1), (2), (3), (4), (5), and (6). To use the canon of *expressio unius* as it was intended (on the text of the statute itself), this means we should not read a seventh, implied exception into the law. *Persian Broad. Serv. Glob., Inc. v. Walsh*, 75 F.4th 1108, 1113 (9th Cir.

2023) ("When a provision contains express exceptions, 'the familiar judicial maxim *expressio unius est exclusio alterius* counsels against finding additional, implied, exceptions.'").

Turning to the legislative history, Alamo repeats the same points made in *Osheske* and addressed in Ms. Garza's affirmative motion. *See* ECF No. 27 at 8-9. But Alamo fails to respond to any of Ms. Garza's arguments about why the VPPA applies outside one's home. *See* ECF No. 18, at 11-13. What is more, the Ninth Circuit already reviewed the VPPA's legislative history and concluded that "Congress's intent in passing the VPPA … evinces the principle that protection is merited when the consumer lacks control over the dissemination of the information at issue." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065-66 (9th Cir. 2015). Ms. Garza lost control of her information when Alamo unilaterally disclosed it to at least five different digital marketing companies without her consent.

In short, because (1) Alamo does not meaningfully dispute that it qualifies as video tape service provider under the *Vizio* test and (2) provides no compelling reason why the Court should apply the ad hoc *Osheske* test, the Court should grant Ms. Garza's motion.

Dated: February 21, 2024            **BURSOR & FISHER, P.A**.

By:     /s/ *Stefan Bogdanovich*
           Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
            sbogdanovich@bursor.com

*Attorneys for Plaintiff Daisy Garza*